**SCHOLASTIC SERVICES
ORGANIZATION, INC.,
Petitioner,**

v.

**COMMONWEALTH of Pennsylvania,
Respondent.**

**V. David MATTICE, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 18, 1998.
Decided Nov. 30, 1998.

Joseph D. Holston, Jr., Harrisburg, for petitioner.

Thomas D. Kimmett, Harrisburg, for respondent.

Before DOYLE and LEADBETTER, JJ., and McCLOSKEY, Senior Judge.

DOYLE, Judge.

Before the Court are the appeals of Scholastic Services Organization (Scholastic) and V. David Mattice (Mattice) from separate orders of the Board of Finance and Revenue (Board) affirming the orders of the Board of Appeals which had sustained an assessment in the amount of $20,178.80 for sales tax against Scholastic and $1,222.36 for sales tax against Mattice.

The parties in each of the appeals have entered into stipulations of fact with the Commonwealth pursuant to Pa. R.A.P. No. 1571(f). Both Mattice[1] and Scholastic sell taxable and non-taxable items of personal property such as toys, calendars, books, clocks, candy and cookies, usually to non-profit and charitable organizations. Their customers include day-care centers, nursery schools and some businesses.

■ The Department of Revenue (Department) conducted a state tax audit of Mattice for the period from January 1, 1991, to December 31, 1991. The Department conducted an identical audit of Scholastic for the period from January 1, 1992, to March 31, 1994. As a result of these audits, the Department determined that Mattice and Scholastic failed to collect sales tax on numerous sales for which no exemption certificates[2] were supplied. Although the auditor offered Mattice and Scholastic an opportunity to obtain exemption certificates from any of its customers listed on the audit schedule, they declined the extra time because they conceded that none of their customers on the audit schedule were tax exempt organizations.

On August 3, 1994, as the result of the audit, the Department issued an assessment against Mattice for sales tax in the amount of $1,222.36, plus interest and penalty. The Department issued a similar assessment against Scholastic in the amount of $20,-178.80 on the same day. On September 6, 1994, both Mattice and Scholastic filed petitions for reassessment with the Department's Board of Appeals.

---

1. Mattice operated his business as a sole proprietorship during 1991, prior to incorporating as "Scholastic Service Organization" on January 1, 1992.

2. Although not defined in the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101–10004, an exemption certifi-

cate is a certificate furnished by the purchaser of goods indicating that the transaction is not subject to tax and providing the reasons for that conclusion, *e.g.*, that the goods are for resale. *Ernest Renda Contracting Co. v. Commonwealth*, 516 Pa. 325, 532 A.2d 416 (1987).

On November 10, 1994, the Board of Appeals issued a decision and order sustaining the tax assessment against Scholastic in all respects, except that all penalties were abated. On January 5, 1995, Scholastic filed a petition for review with the Board, which sustained the Board of Appeals' decision in its entirety on June 30, 1995. This appeal followed.

In the case of Mattice, the Board of Appeals mailed its decision on January 26, 1995. Mattice, however, did not file a petition for review of that decision until March 28, 1995, one day after the statutory appeal period expired.[3] The Board, nonetheless, sustained the decision of the Board of Appeals, and this appeal by Mattice followed.

■ On appeal,[4] both Mattice and Scholastic present the same arguments: (1) a valid exemption certificate is not an absolute requirement for a transaction to qualify as tax exempt under the resale exclusion; and (2) both Mattice's and Scholastic's sales to school organizations, church groups and other similar entities were for resale and, thus, excluded from tax.

Before addressing the merits of the above appeals, however, we must determine whether this Court has jurisdiction to entertain Mattice's appeal because he failed to file his petition for review of the Board of Appeals' decision within 60 days of the date of mailing of that decision.

■ As recently as this Court's decision in *Biro v. Commonwealth*, 707 A.2d 1205 (Pa.Cmwlth.1998), this Court has recognized the well-established principle that " 'limita-

tions periods are absolute conditions to the right to obtain relief.' " *Id.* at 1206 (*quoting Federal Deposit Insurance Corp. v. Board of Finance and Revenue*, 368 Pa. 463, 470, 84 A.2d 495, 498 (1951)). In the present case, it is undisputed that Section 234 of the Tax Reform Code specifically provides a 60–day appeal period which began on January 26, 1995, the date of mailing of the Board of Appeals' decision. The parties stipulated that Mattice did not file his appeal until March 28, 1995, which is 61 days after the mailing date of the decision, and Mattice offered no reason which would support an appeal nunc pro tunc. Accordingly, because the petition was filed after the expiration of the statutory appeal period, the Board erred by considering Mattice's petition on the merits because it lacked jurisdiction to do so. *Department of Revenue v. Niemeyer*, 12 Pa. Cmwlth. 388, 316 A.2d 152 (Pa.Cmwlth. 1974).[5] Likewise, this Court cannot entertain Mattice's appeal, and, therefore, regardless of the outcome of Scholastic's appeal, Mattice is not entitled to relief.

We now turn to the merits of Scholastic's appeal. Section 202(a) of the Tax Reform Code provides as follows:

> There is hereby imposed upon each separate sale at retail of tangible personal property or services, as defined herein, within this Commonwealth a tax of six per cent of the purchase price, which tax shall be collected by the vendor from the purchaser, and shall be paid over to the Commonwealth as herein provided.

72 P.S. § 7202(a). The Tax Reform Code defines the phrase "sale at retail" to *not*

---

3. Section 234 of the Tax Reform Code, 72 P.S. § 7234, provides that a person seeking review of a decision on a petition for reassessment may file a petition for review with the Board within 60 days of the mailing date on the decision. In the present case, Mattice had from January 26, 1995, the date which the parties stipulated that Mattice received the decision, until March 27, 1995, to request review of the decision. Mattice, however, did not file a request for review until March 28, 1995, one day after the appeal period expired.

4. When reviewing a decision of the Board of Finance and Revenue, this Court has the broadest discretion because, although brought within our appellate jurisdiction, this Court essentially

performs the function of a trial court. *Consolidated Rail Corporation v. Commonwealth*, 679 A.2d 303 (Pa.Cmwlth.1996), *aff'd*, 547 Pa. 453, 691 A.2d 456 (1997).

5. The Board's entertainment of the appeal did not, of course, excuse or correct Mattice's error of failing to file his appeal in a timely manner. Likewise, this action did not waive the Commonwealth's right to raise the issue of the lack of subject matter jurisdiction on appeal to this Court, even though the Commonwealth did not raise the issue before the Board, because questions of subject matter jurisdiction cannot be waived. *See H.R. v. Department of Public Welfare*, 676 A.2d 755 (Pa.Cmwlth.1996).

include "any such transfer of tangible personal property or rendition of services for the purpose of resale." 72 P.S. § 7201(k)(8)(i). Further, Section 237 of the Tax Reform Code, 72 P.S. § 7237, places the affirmative duty on the seller or lessor of tangible personal property to collect the tax from its purchasers and remit the tax to the Department of Revenue.

■ To facilitate the collection of sales tax by vendors, as well as to provide a vendor with guidance as to which transactions are subject to sales tax, the General Assembly provided for the use of exemption certificates in Section 237(c) of the Tax Reform Code:

(c) Exemption Certificates. If the tax does not apply to the sale or lease of tangible personal property or services, the purchaser or lessee **shall** furnish to the vendor a certificate indicating that the sale is not legally subject to the tax. The certificate shall be in substantially such form as the department may, by regulation, prescribe. Where the tangible personal property or service is of a type which is never subject to the tax imposed or where the sale or lease is in interstate commerce, such certificate need not be furnished.... An exemption certificate, which is complete and regular and on its face discloses a valid basis of exemption if taken in good faith, shall relieve the vendor from the liability imposed by this section. An exemption certificate accepted by a vendor ... in the ordinary course of the vendor's business, which on its face discloses a valid basis of exemption consistent with the activity of the purchaser and character of the property or service being purchased or which is provided to the vendor by a charitable, religious, educational or volunteer firemen's organization and contains the organization's charitable exemption number and which, in the case of any purchase costing two hundred dollars ($ 200) or more, is accompanied by a sworn declaration on a form to be provided by the department of an intended usage of the property or service which would render it nontaxable, shall be presumed to be taken in good faith and the burden of proving otherwise shall be on the Department of Revenue.

72 P.S. § 7237(c) (emphasis added). Thus, by accepting a valid exemption certificate in good faith, the vendor is excused from collecting sales tax otherwise due on the transaction.

■ In the present case, Scholastic asserts that an exemption certificate is not required to establish that a transaction was exempt from the sales tax. Rather a vendor may establish that a transaction was not subject to sales tax by other means. In support of this argument, Scholastic points to two regulations promulgated by the Department which address the taxability of certain transactions, as well as the use of exemption certificates. The first regulation is 61 Pa.Code § 32.3(b), which provides in relevant part as follows:

(b) *Presumption of taxability.* Every sale of tangible personal property is presumed to be at retail and therefore subject to tax. A purchaser claiming the resale exemption shall therefore establish that the specific property purchased is to be resold.

61 Pa.Code § 32.3(b). In addition, Scholastic points to 61 Pa.Code § 32.2(b)(2), which provides:

(2) *Acceptance in good faith.* An exemption certificate to be accepted in good faith shall also meet the following requirements:

(i) The certificate shall contain no statement or entry which the seller or lessor knows, or has reason to know, is false or misleading. A certificate accepted by a seller or lessor, in the ordinary course of his business, which on its face discloses a valid basis of exemption consistent with the activity of the purchaser and character of the property or service being purchased, shall be presumed to be taken in good faith.

(ii) A seller or lessor is presumed to be familiar with the law and regulations regarding the property in which he deals. Where a seller or lessor has accepted a blanket exemption certificate, each transaction between the parties is considered a separate claim for exemption thereunder, and the seller or lessor shall, therefore, exercise good faith in each transaction, in order to avoid liability for the tax.

(iii) The certificate shall be in the physical possession of the seller or lessor, and available for Departmental inspection, on or before the 60th day following the date of the sale or lease to which the certificate relates. Where a certificate is not made available for Departmental inspection on or before that time, the seller or lessor shall prove to the satisfaction of the Department, by means of evidence other than an exemption certificate, that the sale or lease in question is, in fact, exempt. In the absence of proof the transaction will be deemed taxable and assessed as such.

61 Pa.Code 32.2(b)(2)(i)–(iii). Based upon the above regulations, Scholastic acknowledges that a presumption of taxability exists on the sale of tangible personal property, but it asserts nevertheless that, under the Department's regulations, it need not demand an exemption certificate from its buyers but may rebut the presumption of taxability through means other than an exemption certificate under 61 Pa.Code 32.2(b). Specifically, Scholastic asserts that it may use evidence of its *subjective* belief that transactions were non-taxable to rebut the presumption of taxability, despite the fact that it admitted that it never demanded or received valid exemption certificates from its buyers. We are unpersuaded by Scholastic's argument.

The section upon which Scholastic principally relies, 61 Pa.Code § 32.2(b), clearly controls a situation where a vendor has *received* an exemption certificate in good faith, but cannot later produce it. In the present case, Scholastic concedes that it never demanded or received any certificates, but instead relied on the representations of its buyers. Such subjective beliefs cannot provide the basis for exemption from sales tax in the present case because Scholastic never received valid exemption certificates from its buyers at the outset.

Further support for the conclusion that an exemption certificate is required in the present situation is found in this Court's decision in *Bruce & Merrilees Electric Co. v. Commonwealth,* 109 Pa.Cmwlth. 101, 530 A.2d 994 (Pa.Cmwlth.1987). In *Bruce,* not only did this Court reaffirm the requirement of an exemption certificate, but we also affirmed the imposition of sales tax on voluminous transactions which were supported by "blanket" exemption certificates, which did not identify the transaction or the basis for exemption from the sales tax. Therefore, despite the fact that Bruce & Merrilees received exemption certificates, this Court rejected the certificates because they were incomplete and irregular on their face.

Under *Bruce,* once the determination was made that the exemption certificates were irregular and incomplete, and, therefore, not valid, the Court's analysis as to the exemption of the transactions stopped, and we gave no indication that, as an alternative position, Bruce & Merrilees could establish exemption based on its subjective belief that any or all of the transactions were tax exempt or that it could establish its exemption from the duty to collect sales tax by **any** means other than through the exemption certificates. Indeed, Scholastic has pointed to no opinion of a Pennsylvania Court adopting a subjective belief standard in this area of taxation. By ignoring the requirement of initially demanding and receiving a valid, complete exemption certificate, this Court would not only eliminate the uniformity of the sales tax collection process but also unnecessarily burden the Department by forcing it to examine each claimed exemption on a case-by-case basis and be bound by the subjective beliefs, no matter how unfounded, of the parties to the transaction. Accordingly, we do not read the Department's regulations or the Tax Reform Code to provide for such an alternative method of relieving the vendor of the liability of collecting sales tax.

Accordingly, because Scholastic did not produce valid exemption certificates for its tax-exempt transactions and did not attempt to obtain the same, it has not demonstrated that the underlying transactions were exempt from the sales tax. Therefore, we believe the Department correctly decided this matter and we will enter judgment in favor of the Commonwealth.

### ORDER

NOW, November 30, 1998, judgment is entered in favor of the Commonwealth. This

order will become final unless exceptions are filed within 30 days of the entry of this order.